IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OMAR SULAIMAN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 15 C 04518 |
| BIEHL & BIEHL, INC., | ) ) | Judge John J. Tharp, Jr. |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Cases brought to enforce consumer rights established by statutes such as the Fair Debt Collection Practices Act ("FDCPA") are sometimes criticized as lawyer-driven vehicles that have more to do with efforts to obtain attorney's fees than they do with providing relief to the plaintiff-consumers. *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 285-286 (S.D.N.Y. 2003) ("the minimal recovery available to each plaintiff under the FDCPA creates legitimate concern regarding client control of the litigation"); Lynn A.S. Araki, *Rx for Abusive Debt Collection Practices: Amend the FDCPA*, 17 U. HAW. L. REV. 69, 108 (1995) ("Attorneys appear to be more interested in the mandatory statutory award of attorney's fees than they are in protecting the rights of consumers."). This case may add fuel to the fire; here, at least according to the defendant, the lawyer has dispensed with the plaintiff altogether—the attorney *is* the plaintiff. Omar Sulaiman, an attorney who specializes in consumer protection litigation, brings this action against Biehl & Biehl ("Biehl"), a debt collection agency, seeking to collect statutory damages and attorney's fees based on two communications he had with Biehl concerning a disputed $32 debt concerning a newspaper subscription. Both parties have filed summary judgment motions; for the following reasons, Sulaiman's motion is denied and Biehl's motion is granted.

1

# BACKGROUND[1]

Omar Sulaiman graduated from law school in May 2013. SSOF ¶ 16. He has worked in the area of consumer protection law since 2006 at Sulaiman Law Group, which his brother, Ahmad Sulaiman, founded. BSOF ¶¶ 25-26.[2] Attorneys from the Sulaiman firm represent the plaintiff in this action. On or about May 29, 2014, Sulaiman purchased a subscription for the Chicago Tribune newspaper from a door-to-door representative of the Tribune for $20.00. SSOF ¶ 6. The subscription order Sulaiman signed explains that he purchased a "continuous subscription but [that he] may cancel at any time . . . ." B Ex. B; *see* B Resp. ¶ 6. Sulaiman asserts that the Tribune representative informed him to the contrary, however, that after the six-month subscription expired, he would not be liable for any other fees to the Tribune and his subscription would be deemed completed. SSOF ¶ 7. Sulaiman received his last newspaper in November 2014. SSOF ¶ 8. Because he did not cancel the subscription or pay any additional amount, the Chicago Tribune placed a delinquent debt on his account and retained Biehl, a collection agency, to collect the debt. BSOF ¶¶ 38-39. Biehl has been handling collections for a variety of clients, including newspapers, healthcare organizations, transportation entities, manufacturers, and service providers, for about seventy-five years. BSOF ¶¶ 19, 23. Biehl is not a law firm nor does it employ any lawyers. SSOF ¶ 14.

---

[1] Citations to the record are abbreviated as follows: Sulaiman's Statement of Material Facts ("SSOF"), ECF No. 26; Biehl's Response to Sulaiman's Statement of Material Facts ("B Resp."), ECF No. 32; Biehl's Statement of Additional Facts ("BSOF"), ECF No. 32; and Sulaiman's Response to Biehl's Statement of Additional Facts (S Resp.), ECF No. 35.

[2] Although Omar Sulaiman graduated from law school in 2013, he was not yet an attorney in 2015 when this case was filed; he was admitted to the Illinois Bar in May 2016. *See* https://www.iardc.org/ldetail.asp?id=362631712 (last visited Sep. 30, 2016). The Sulaiman firm's web site states that "[s]ince 2004, he has been an integral part of supporting and growing the firm into the success it is today." *See* http://www.sulaimanlaw.com/Attorney-Profiles/Omar-T-Sulaiman.aspx.

On or about November 25, 2014, Sulaiman received a dunning letter from Biehl. SSOF ¶ 9. The letter is on Biehl & Biehl, Inc. letterhead and states, "Chicago Tribune Circulation has retained us to collect the amount of $32.25 you owe them." SSOF ¶¶ 9-10; Compl. Ex. A, ECF No. 15-1. The letter also states, "[t]his is a communication from a debt collector. This is an attempt to collect a debt." BSOF ¶ 41. Additionally, there is a box in the top right corner of the letter titled "DEBT INFORMATION" that contains the creditor (Chicago Tribune Circulation), account number, date, and balance owed. BSOF ¶ 43. The letter contains a seal in the bottom-right corner which states, "Commercial Law League of America, Agency [Action] Certified."[3] B Resp. ¶ 11; B Ex. C. Aside from this letter, Biehl did not send any other letters or make any telephone calls to Sulaiman. BSOF ¶ 44.

Four months later, on March 25, 2015, Sulaiman called Biehl to inquire about the letter.[4] SSOF ¶ 15. Sulaiman asked about the details of his Tribune subscription and asserted that the Tribune employee who sold him the subscription did not inform him that it would automatically renew for another cycle if it was not canceled. S Ex. F, ECF No. 26-6. At the end of the call, Sulaiman requested that Biehl not call him again and the Biehl employee stated, "[n]o sir. . . . as long as you're in collection, we're a collection agency. They placed you here, we have to call on it." S Ex. F. During the course of the call, Sulaiman did not inquire as to whether Biehl was a law

---

[3] Biehl explained that the Commercial Law League of America ("CLLA") created the stamp on the collection letter and that Biehl placed the stamp on its collection letters to enhance and promote Biehl's professionalism and commitment to the industry. B Ex. D, Dep. of Biehl 32:8-11, ECF No. 32-4. The certification signifies that Biehl complied with all of the requirements of the CLLA necessary to become eligible to receive a certificate of compliance, such as undergoing a rigorous application process, financial audit, and a semiannual production and disclosure of reconciliation and verification of its trust account. BSOF ¶ 52.

[4] Sulaiman's Statement of Facts represents that he made this call "believing a lawsuit may be forthcoming" to collect on the $32 debt. SSOF ¶ 15.

firm. *See* S Ex. F. Biehl never called Sulaiman nor contacted him in any way after Sulaiman's phone call to Biehl. BSOF ¶ 44.

On July 24, 2015, Sulaiman brought suit against Biehl, alleging that Biehl's dunning letter and conduct on the phone call violated the FDCPA, 15 U.S.C. §§ 1692e-1692f, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/2. The matter is before the Court on the parties' cross-motions for summary judgment.

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact "exists only if there is enough evidence upon which a reasonable jury could return a verdict in" the non-movant's favor. *Swetlik v. Crawford*, 738 F.3d 818, 826 (7th Cir. 2013). When there are cross-motions for summary judgment, the court "construe[s] the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005). "[D]istrict courts presiding over summary judgment proceedings may not weigh conflicting evidence, . . . or make credibility determinations." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). Rather, the court's role is to determine whether there is a genuine issue for trial. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

Sulaiman contends that Biehl's dunning letter was designed to deceive debtors into believing that Biehl was a law firm, thereby violating § 1692e(3) of the FDCPA. Compl. ¶ 29. Additionally, he argues that Biehl violated § 1692f when one of Biehl's employees told

Sulaiman that he had no right to demand that the communications cease and that it was up to the Tribune to decide if and when Sulaiman would be contacted for collection purposes. Compl. ¶ 33.

**I.      Section 1692e**

Section 1692e of the FDCPA states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C § 1692e. Furthermore, § 1692e(3) states that "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney" violates the FDCPA. For a debt validation notice to be valid, it "must be effective, and it cannot be cleverly couched in such a way as to eviscerate its message." *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996). The consumer "is to be protected against confusion, whatever form it takes," be it outright contradiction, overshadowing, or the failure to explain an apparent contradiction. *Bartlett v. Heibl*, 128 F.3d 497, 500-01 (7th Cir. 1997).

**A.      The Unsophisticated Consumer Standard**

Sulaiman contends that the "unsophisticated consumer" standard is the benchmark for determining whether Biehl's dunning letter was misleading. *See Veach v. Sheeks*, 316 F.3d 690, 692 (7th Cir. 2003) ("In deciding whether the collection letter is confusing, the court asks whether the validation notice is likely to be understood by an unsophisticated consumer."). The Seventh Circuit has explained that the unsophisticated consumer "may be 'uninformed, naïve, or trusting,'" but also possesses "rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence' and is capable of making basic logical deductions and inferences." *Gruber v. Creditors' Protection Service, Inc.*, 742 F.3d 271, 273 (7th Cir. 2014) (quoting *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)). The unsophisticated consumer "may tend to read collection

letters literally, [but] he does not interpret them in a bizarre or idiosyncratic fashion." *Pettit*, 211 F.3d at 1060. A statement will only be considered misleading under the unsophisticated consumer standard if "a significant fraction of the population would be similarly misled." *Id.*

Biehl argues, however, that the "competent lawyer" standard should apply to Sulaiman because "he is a highly sophisticated and educated individual with a law degree who is well versed in consumer protection statutes like the FDCPA." B Mem. in Supp. 5, ECF No. 33. Biehl cites *Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769 (7th Cir. 2007) in support of its argument: "Since [ ] most lawyers **who represent consumers** in debt-collection cases are knowledgeable about the law and practices of debt collection . . . we conclude that a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable." *Id.* at 774-75 (emphasis added).

In advancing this argument, however, Biehl ignores the distinction between representations made to a consumer's lawyer and representations made to a consumer who also happens to be a lawyer. Although Sulaiman is a lawyer,[5] in the case at bar, he is the consumer who received an allegedly deceptive debt collection letter. Because the competent lawyer standard only applies to the consumer's attorney, not to the consumer himself, the Court will not apply the heightened standard to Sulaiman. In the context of attorneys representing consumers, it makes sense to apply a higher standard; such attorneys presumably possess specialized knowledge about laws applicable to the matter they have undertaken (or will undertake to obtain the necessary familiarity to comport with their ethical obligations to their clients). The same

---

[5] As noted above in Note 2, Sulaiman had a law degree at the time of the relevant communications but had not yet been admitted to the bar and so, technically, was not a lawyer when these communications occurred.

presumption is unwarranted, however, whenever a consumer who happens to be an attorney is contacted; there is little reason to presume that, say, a patent lawyer or a criminal defense attorney (much less an unlicensed law school graduate) will be any more familiar with the intricacies of debt collection laws than many other consumers. While Sulaiman happens to have such expertise, the standard cannot require an assessment of the relative consumer protection expertise of attorney-consumers.

### B. Whether Extrinsic Evidence is Required

As plaintiff, Sulaiman is required to establish that the dunning letter was misleading to an unsophisticated consumer. Whether a dunning letter is confusing to an unsophisticated consumer is generally a question of fact for a jury, but "a plaintiff fails to state a claim and dismissal is appropriate as a matter of law when it is 'apparent from a reading of the letter that not even a significant fraction of the population would be misled by it.'" *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) (quoting *Taylor v. Cavalry Inv.*, *L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004)). Biehl argues that the letter is clearly not misleading on its face, and to prove that the letter is misleading under the objective unsophisticated consumer standard, Sulaiman needed to produce extrinsic evidence of consumer confusion.

To determine whether a plaintiff must provide extrinsic evidence to prevail on his FDCPA claim, the Seventh Circuit uses the three-category analysis set forth in *Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009). In the first category "are cases involving statements that plainly, on their face, are not misleading or deceptive. In these cases, [the court] do[es] not look to extrinsic evidence to determine whether consumers were confused." *Id.* at 800. Instead, the court dismisses the case or grants summary judgment for the defendant based on its "determination that the statement complied with the law." *Id.*; *see, e.g.*, *Lox v. CDA, Ltd,*, 689

F.3d 818, 822 (7th Cir. 2012) (where the allegedly offensive language is not misleading, no extrinsic evidence is necessary to show that the unsophisticated consumer would not be confused); *Wahl v. Midland Credit Mgt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009) (dunning letter not false or misleading as a matter of law because unsophisticated consumer would be able to determine that "principal balance" included principal and original creditor's interest).

The second category of cases involve statements that are "not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer." *Ruth*, 577 F.3d at 800. In these cases, the Seventh Circuit requires that plaintiffs produce extrinsic evidence, "such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id.*; *see, e.g., Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) ("Hahn does not contend that the 'interest due' line item is misleading. To get anywhere with such an argument she would need to introduce survey evidence, or some equivalent, demonstrating how the language actually affects borrowers.").

Cases which involve "plainly deceptive communications fall into a third category, one where [the court] will grant summary judgment for the plaintiffs without requiring them to prove what is already clear." *Ruth*, 577 F.3d at 801. For example, in *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), the notice required under § 1692g (that the debtor has 30 days to dispute the debt) was followed by language indicating that "if the above does not apply to you," payment should be made in 10 days and that "this will avoid additional proceedings by our firm." *Id.* at 226. The court found this language to be contradictory and confusing to the unsophisticated consumer and affirmed the grant of summary judgment for the plaintiff without requiring extrinsic evidence. *See id.*

Thus, the Court can rule as a matter of law if the letter falls into category one or category three. For those letters that fall into category two, the plaintiff must produce extrinsic survey evidence to prevail on his claim. *See Williams v. OSI Educational Services, Inc.*, 505 F.3d 675, 678 (7th Cir. 2007).

## C. The Letter Is not Misleading or Deceptive as a Matter of Law

Sulaiman asserts that Biehl's letter is misleading on its face and therefore falls into category three of the *Ruth* analysis for three reasons: the name Biehl & Biehl, Inc. is intentionally designed to make the recipient think that Biehl is a law firm because most law firms have multiple names in their title; use of the word "retain" in Biehl's letter is reminiscent of law firms because lawyers are usually retained by their clients; and the seal stating "Commercial Law League of America, Agency Certified" implies that Biehl is a law firm. S Mem. in Supp. 5-6.

These arguments are a stretch, at best. The Court cannot conclude, as a matter of law, that upon receiving and reading the letter, an unsophisticated consumer would be confused as to whether the letter came from a collection agency or from a lawyer. The letter explicitly states that it is "a communication from a debt collector," that "Chicago Tribune Circulation has retained [Biehl] to collect the amount of [the debt]," and bears a logo indicating Biehl's membership in the "International Association of Commercial Collectors, Inc." Compl. Ex. A. That the name Biehl & Biehl, Inc. consists of multiple names makes it no more likely to be a law firm than to be an accounting firm (*e.g.*, Deloitte & Touche LLP), a jewelry store (*e.g.*, Rogers & Hollands), a clothing store (*e.g.*, Abercrombie & Fitch), or any number of other businesses titled in the name of multiple individuals. Any inference that "Biehl & Biehl" is a law firm is further undermined by the fact that the firm name is followed by the "Inc." designation that identifies the firm as a general business corporation rather than by other business organization

9

designations—such as "PC" (professional corporation) or LLP (limited liability partnership)—that law firms are typically permitted to adopt. Nor is the term "retained" exclusively used in the legal industry; all manner of professionals and service providers—such as collection agencies—may be "retained" by their clients. And as to the CLLA seal, Sulaiman mischaracterizes the seal when he argues that it states that Biehl is "Commercial Law Certified." The seal in fact states: "Commercial Law League of America/Agency Section/Certified." Whatever *that* phrase or certification means, it does not plainly suggest that Biehl is a law firm; to the contrary, that the seal refers to the "Agency Section" of the organization, and appears to be intended as an endorsement of Biehl by some other organization—the Commercial Law League of America—undermine any inference from the seal's reference to "commercial law" that Biehl is a law firm. *See* Compl. Ex. A.

The Court is therefore unpersuaded by Sulaiman's argument that this dunning letter is misleading as a matter of law. To the contrary, a strong argument can be made that the dunning letter at issue here falls into category one because it plainly is not misleading or deceptive.[6] It is, however, unnecessary to declare, as a matter of law, that the letter is not misleading because Sulaiman has not produced evidence "such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Ruth*, 577 F.3d at 800. Having failed to adduce evidence that could establish that the challenged statements are misleading to the typical unsophisticated consumer, Sulaiman has failed to create a genuine

---

[6] There is no language in the dunning letter that "would confuse the reasonable consumer, unsophisticated through [ ]he may be." *Wahl*, 556 F.3d at 646. Sulaiman's arguments "ascribe to the hypothetical unsophisticated debtor all of the irrational notions" the Seventh Circuit has warned against. *Pettit*, 211 F.3d at 1062. Accordingly, there is no genuine issue as to the deceptiveness of the letter and no extrinsic evidence is necessary for the Court to grant summary judgment to Biehl on the § 1692e(3) claim and deny Sulaiman's motion for summary judgment.

dispute of fact as to the misleading nature of the communications and his claim relating to the dunning letter must fail.

Citing *Ross v. RJM Acquisitions Funding*, LLC, 480 F.3d 493, 495 (7th Cir. 2007) for the proposition that "[t]he state of mind of the consumer is *always* relevant," Resp. 4, ECF 34 (emphasis in original), Sulaiman argues that evidence of **his** confusion is sufficient to establish that the typical unsophisticated consumer would be misled by the Tribune's dunning letter. Resp. 4-5, ECF 34. After all, he, "a law school graduate with extensive experience dealing with debt collectors, was *actually* misled into believing that Biehl is a law firm." If "a highly sophisticated consumer, such as Plaintiff, was misled by the letter," there is, he argues, "no question that the letter would also deceive the 'unsophisticated consumer.'" *Id.*

Sulaiman's only authority for this point, *Ross,* says nothing of the sort, however; the language he attributes to that case does not appear in the opinion, which does not discuss the unsophisticated consumer standard at all.[7] Putting this presumably inadvertent misstep aside, Sulaiman's proposition is, in any event, wrong. The unsophisticated consumer test, recall, is an objective rather than subjective test. One plaintiff's subjective belief that a communication is misleading does not establish that the communication would mislead a significant fraction of the public. *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000); a sample of one is simply inadequate. *See DeKoven v. Plaza Assocs.*, 599 F.3d 578, 581 (7th Cir. 2010) (affirming rejection of a survey based on an effective sample size of 27). As the Seventh Circuit has repeatedly held, a plaintiff's own testimony does not provide an adequate basis to support a conclusion that a communication would be misleading to an unsophisticated consumer. *See, e.g.*, *Sims v. GC Servs. L.P.*, 445 F.3d 959, 963 (7th Cir. 2006) ("[t]he burden of proof is on

---

[7] Sulaiman's opening brief in support of his motion for summary judgment includes the same error. *See* Mem. in Support 4; ECF 27.

the plaintiffs to present evidence of confusion (beyond their own) in the form of an objective measure"); *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 415 (7th Cir. 2005) ("when the letter itself does not plainly reveal that it would be confusing to a significant fraction of the population, the plaintiff must come forward with evidence beyond the letter and beyond his own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial"); *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004) ("a debtor cannot create a triable issue just by submitting an affidavit in which he says that he misunderstood the dunning letter"); *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004) ("if it is unclear whether the letter would confuse intended recipients of it, then to make out a prima facie case the plaintiff has to go further and present evidence (beyond her own say-so) of confusion"); *Petit,* 211 F.3d at 1061-62 (plaintiff's own testimony held insufficient to create genuine issue of fact regarding likely confusion of unsophisticated consumer).

This is true even if the sample of one is a highly educated lawyer specializing in consumer protection law. Indeed, one might suspect that one so attuned to finding problems in communications from debt collectors would be akin to the famed egg-shell-skull plaintiff, ultra-sensitive to the slightest miscue and finding problems that the less sensitive among us would overlook. Lawyers do not necessarily think the way others do and there is ample reason to question whether they are good proxies for the average Joe. *See, e.g.*, John Herbert Roth, *The Effective Counselor*, 77 Ala. Law. 188, 192 ("In addition to the perceptions of others, it is important to note that the counselor must take into account his own perceptions. For example, lawyers and compliance professionals tend to be more risk averse because we are trained to spot and plan for the worst possible outcomes. In simplified terms, we see the landscape as being covered with landmines, at least one of which is expected to explode. After all, American legal

education largely consists of studying disputes after something has gone wrong or a crime committed."); Susan Swaim Daicoff, LAWYER, KNOW THYSELF: A PSYCHOLOGICAL ANALYSIS OF PERSONALITY STRENGTHS AND WEAKNESSES 25-49 (2004) (summarizing studies showing that judges and lawyers often think differently than non-lawyers).

What is needed instead is extrinsic evidence of consumer confusion, such as consumer surveys or expert testimony. *See, e.g.*, *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (for category of cases that are not facially misleading but have the potential to be misleading, "plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive"); *DeKoven,* 599 F.3d at 580-81. Having failed to adduce any such evidence, Sulaiman has failed to demonstrate a genuine dispute of material fact and, accordingly, summary judgment in favor of Biehl is warranted on Sulaiman's Section 1692e claim.[8]

## II. Section 1692f

Sulaiman asserts that Biehl violated § 1692f of the FDCPA by employing unfair and unconscionable means to collect the subject debt—*i.e.*, when a Biehl employee told Sulaiman that it was up to the Tribune to decide if and when Biehl would contact Sulaiman for collection purposes. Compl. ¶ 33. Section 1692f states that a debt collector "may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The same unsophisticated consumer standard applies to alleged violations of § 1692f. *See McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 759 (7th Cir. 2006) ("[T]he inquiry under §§ 1692e,

---

[8] For Sulaiman to prevail on his § 1692e(3) claim, Biehl's statements in the dunning letter must be both misleading ***and*** material. *See Hahn*, 557 F.3d at 757 (a false or misleading statement is only actionable under § 1692e of the FDCPA if it is material). Since Sulaiman fails to show the Biehl's dunning letter was misleading, the materiality of those statements is inconsequential to the outcome of the pending motions. Accordingly, the Court will not address the issue of materiality.

13

1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the [statement]."). Sulaiman contends that the Biehl employee's actions were unfair and unconscionable because they led Sulaiman to believe that he had to pay the alleged debt in order to prevent harassing phone calls. S Reply 9, ECF No. 34.

Again, Sulaiman's subjective belief that Biehl would contact him if he did not pay the debt is not the appropriate inquiry. *See Pettit*, 211 F.3d at 1062 ("The self-serving opinion of the plaintiff, clearly not an expert or an objective observer, does not create a genuine issue . . . as to whether a significant fraction of the population would have believed the same thing . . . ."). Rather, the inquiry is, based on these facts, whether Biehl's conduct was unfair or unconscionable to an unsophisticated consumer. As with the § 1692e claim, so, too, this claim fails. After sending the initial letter collection letter, Biehl did not contact Sulaiman again by letter nor did Biehl ever contact Sulaiman by phone. BSOF ¶ 44. During the phone call that ***Sulaiman initiated*** with Biehl on March 25, 2015—four months after he received the letter— Sulaiman, not Biehl, brought up the subject of future phone calls from Biehl, despite the fact that Biehl had never made a single call to Sulaiman. Thus, the Biehl representative's response— "that will be up to the paper . . . . They placed you here, we have to call on it"—must be understood from the context of one who had received a single dunning letter four months earlier, and had never received any phone calls from that debt collector. Viewed in that light, the ordinary unsophisticated consumer would not have even thought to ask the question, much less be put in fear that the debt collector was about to unleash a flood of harassing phone calls. S Ex. F. Indeed, to the extent that a consumer knew that he had never received any calls about the debt, Biehl's statement that "we have to call on it" was not even credible, much less unconscionable. That is particularly so given the fact that no calls, much less a flood of them, ever materialized; Biehl

never contacted Sulaiman in the two months *after* Sulaiman made the phone call before he filed this lawsuit. *See* SSOF Ex. A 46:9–47:25, 49:16–50:7, ECF No. 26-1.

The capper to all this is Sulaiman's acknowledgment that, before he called Biehl, it did not even have his cell phone number:

> Q: Did you have any reason to believe that Biehl & Biehl was going to call you?
>
> A: I really did, yes, because I called them from my cell phone and I assumed that they have—they now have my cell phone.

See B-SOF Ex. A at 47:12-16; ECF 32-1. Having armed the bill collector, Sulaiman now claims that it was unfair for the collector to acknowledge that the weapon might be used. This sort of gamesmanship by a consumer does not equate to unconscionable conduct on behalf of the debt collector and does not warrant the protection of the FDCPA. No reasonable unsophisticated consumer would have felt harassed into paying the debt to prevent future contact from Biehl. Because Sulaiman has failed to establish a genuine issue of material fact as to whether Biehl's conduct was unfair or unconscionable to an unsophisticated consumer, Biehl's motion for summary judgment is granted on the § 1692f claim.

## III. The Illinois Consumer Fraud and Deceptive Business Practices Act

To bring a private action under the ICFA, the plaintiff must show that (1) the defendant engaged in a deceptive practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception took place in the course of conducting trade or commerce; and (4) the deception resulted in damages. *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 588 (7th Cir. 2001) (citing *Zekman v. Direct American Marketers, Inc.,* 695 N.E.2d 853, 860 (Ill. 1998)); *see also* 815 Ill. Comp. Stat. 505/10a. The element of actual damages "'requires that the plaintiff suffer actual pecuniary loss.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir.

15

2014) (quoting *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010)). A practice is deemed "unfair" for ICFA purposes based upon factors such as "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [or] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) (citing *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)).

The parties focus on the damages element: Biehl argues that Sulaiman has not proven, or even alleged, that he suffered actual damages. BSOF ¶ 58 (citing Sulaiman's amended Rule 26(a)(1) disclosures, in which he only requests statutory damages and attorney's fees, BSOF Ex. F ¶ 3). Sulaiman argues that, although he did not request actual damages, he nonetheless suffered actual damages in the form of his time and energy spent calling Biehl to dispute the debt. S Reply 10. That argument is too cute by half. Sulaiman was free, of course, to seek statutory damages in lieu of actual damages, but that choice did not relieve him of the obligation to provide evidence of any actual damages he claims to have incurred. Sulaiman evidently reads Rule 26(a)(1)(A)(iii) to require computation and disclosure only of damages that he sought to recover, but the language of the rule is not so limited. Rather, it requires "a computation of each category of damages claimed by the disclosing party" as well as production of the evidentiary materials on which the damage claim is based. *See, e.g., Barsky v. Metro Kitchen & Bath, Inc.*, 587 F. Supp. 2d 976, 995 (N.D. Ill. 2008) (denying motion to amend complaint to add ICFA claim where plaintiff could not prove damages due in part to failure to disclose evidence of those damages in Rule 26 initial disclosures). If Sulaiman was claiming actual damages, he was required by Rule 26(a)(1)(A)(iii) to disclose, and compute, those damages. Sulaiman does not contest that actual damages are an element of an ICFA claim and fails to identify any evidence of

actual damages that he suffered as a result of the conduct he claims violated the ICFA. Accordingly, he failed to meet the disclosure requirements of Rule 26(a)(1)(A)(iii).

Even if Rule 26 did not require disclosure of Sulaiman's claim of actual damages, his ICFA claim would still fail. He relies on *Thompson v. CACH, LLC*, 14 CV 0313, 2014 WL 5420137 (N.D. Ill. Oct. 24, 2014) in support of his argument that the time he spent calling Biehl suffices as actual damages under the ICFA. *Thompson* notes that "it is unclear whether Defendants' assertion—that Thompson's loss of time at work and costs incurred in consulting her attorney are 'not actual damages'—is supportable" because some "courts have found a plaintiff's expenditure of time and money incident to defending a debt collection effort to suffice as damages under the ICFA." *Id*. at *8 (citing *Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746, 756 (N.D. Ill. 2012)). Sulaiman, however, has not expended time and money ***defending*** a debt collection lawsuit; he initiated this lawsuit. The only time he spent responding to Biehl's collection letter was the nine minute phone call that he initiated four months later, having heard nothing further regarding the alleged debt, and he has not provided any evidence of any pecuniary loss. Without such pecuniary loss, Sulaiman's ICFA claim fails. *Camasta*, 761 F.3d at 739; *see also Pantoja v. Portfolio Recovery Associates, LLC*, 78 F. Supp. 3d 743, 747 (N.D. Ill. 2015) ("[P]laintiff has failed to establish any actual damage as a result of defendant's violations [because h]e has not established any pecuniary loss."); *Whittler v. Midland Funding, LLC*, 14 C 9423, 2015 WL 3407324, at *3 (N.D. Ill. May 27, 2015) (holding that a collection agency's filing of a lawsuit in the wrong venue, causing plaintiff to expend unnecessary time and energy traveling to the wrong venue, did not constitute actual damages under the ICFA); *Aker v. Bureaus Inv. Grp. Portfolio No. 15 LLC*, No. 12 C 03633, 2014 WL 4815366, at *7 (N.D. Ill. Sept. 29, 2014) ("[Emotional] damages are not pecuniary in nature and therefore they cannot, on

their own, support a claim under the ICFA."); *Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1053 (Ill. App. Ct. 2009) ("The failure to allege specific, actual damages [in the form of specific economic injuries] precludes a claim brought under the Consumer Fraud Act.").

Accordingly, Biehl's motion for summary judgment is granted as to the ICFA claim.

\* \* \*

For the foregoing reasons, Biehl's motion for summary judgment is granted in its entirety and judgment will be entered in Biehl's favor. Sulaiman's partial motion for summary judgment is denied.

Dated: September 30, 2016

John J. Tharp, Jr.
United States District Judge